**DAVID J. HOLDSWORTH** (4052)

Attorney for Plaintiff

9125 South Monroe Plaza Way, Suite C

Sandy, UT  84070

Telephone (801) 352-7701

Facsimile (801) 567-9960

david_holdsworth@hotmail.com

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| MEREDITH MANNEBACH, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF UTAH HOSPITALS | : | |
| AND CLINICS, | : | Civil No. 2:20-cv-00096-PMW |
| | : | |
| Defendant. | : | Hon. Paul M. Warner |

COMES NOW, Meredith Mannebach, Plaintiff herein, complains of

Defendant University of Utah Hospitals and Clinics, demands trial by jury, and, as and

for causes of action, alleges as follows:

**PARTIES**

1.     Plaintiff Meredith Mannebach (hereinafter "Plaintiff"or "Ms.

Mannebach") is a citizen of the United States and a resident of the State of Utah.

2.      The entity named as Defendant herein is University of Utah

Hospitals and Clinics.  At all times relevant hereto, University of Utah Hospitals and

Clinics (hereinafter "Defendant"), employed 15 or more employees and was an "employer" within the meaning of the Americans with Disabilities Act and the Vocational Rehabilitation Act of 1973.

3.     On August 24, 2017, Plaintiff filed a Charge of Discrimination with the Utah Labor Commission and Labor Division ("UALD") in which she alleged that Defendant discriminated against her based on disability, and retaliated against her for engaging in protected activity.  Plaintiff filed her Charge of Discrimination within 180 days from the last date of the alleged harm.

4.     The Court may consider for its determination all events that occurred between February 25, 2017, the 180-day jurisdictional mark, and the date of filing of August 24, 2017.  The Court may treat evidence of events occurring before February 25, 2017 as being untimely for purposes of relief.  However, the Court may give evidence of such events weight for evidentiary purposes.  All jurisdictional requirements have been met, as required by the ADA and the Vocational Rehabilitation Act, as amended.

**JURISDICTION AND VENUE**

5.     Plaintiff brings this Complaint against the Defendant alleging violations of the Americans with Disabilities Act and the Vocational Rehabilitation Act, as amended, which provide that it is unlawful to discriminate against an employee

2

in her employment on the basis of her disability and to retaliate against an employee for engaging in protected activity.

6.     The Court has subject matter jurisdiction of this case pursuant to federal question — namely, the application and interpretation of the ADA and the Vocational Rehabilitation Act.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims arose in the State of Utah, Defendant employed Plaintiff in the State of Utah; all of the employment practices alleged herein occurred within the State of Utah; and the relevant employment records are maintained in the State of Utah.

## STATEMENT OF FACTS

8.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through ___ above as if alleged in full herein.

9.     Plaintiff is over forty-years of age.  Pertaining to age, Plaintiff alleges that her supervisor, Ischa Jensen (hereinafter "Jensen"), was a new supervisor, who was intimidated by Plaintiff's age as such correlated with her experience.

10.     Plaintiff alleges she has a migraine headache impairment which substantially limits some of her major life activities.  Plaintiff alleges that she experiences migraine headaches on a frequent basis.  Plaintiff alleges that such migraine headaches can last from 12 to 24 hours.  Such migraine headaches cause

debilitating pain, sensitivity to light and noise, nausea, inability to drive, an inability to

think and concentrate, an inability to interact with others and limitations in working.

11.     In February 2017, Defendant hired Plaintiff as a Project Manager.

12.     Plaintiff's duties as a Project Manager consisted of, but were not

limited to, maintaining responsibility over project management processes and

procedures to include planning, execution, monitoring progress of and completion of

all aspects of projects Defendant assigned to her.

13.     Plaintiff alleges that, approximately after a month of her hire, she

informed Jensen that she experienced severe migraine headaches on a frequent basis

and needed some flexibility with her work schedule and situation.

14.     Plaintiff alleges that, after she notified Jensen of her impairment,

ad limitations, her supervisor, Jensen, treated her differently and adversely because of

her disability.

15.     Plaintiff alleges that, in March or April 2017, Jensen accused her

of sleeping in a meeting.  Plaintiff alleges she was not sleeping but had simply closed

her eyes for 30 seconds due to a headache and because the bright lights were bothering

her.  She alleges that she discussed the misunderstanding with Jensen and, after doing

so, Plaintiff had the impression that such discussion cleared up the misunderstanding.

4

16.     Plaintiff alleges that, as of mid-May 2017, she had missed one day of work and had been tardy on three separate occasions because of her migraine headache disability.

17.     Plaintiff alleges that, on May 16, 2017, she met with Jensen to discuss her attendance.  Plaintiff alleges that, because the attendance issues were related to her migraine disability and had become of concern to Jensen, that she advised Jensen of her plans to formally request a reasonable accommodation for her migraine headache disability.

18.     Plaintiff alleges that, on May 17, 2017, she requested various reasonable accommodations, including time off of work to be able to attend physical therapy and counseling, a flexible work schedule, the ability to work from home, elimination or reduction of fluorescent lighting, and the provision of a parking space closer to her office.

19.     Plaintiff alleges that, on May 24, 2017, Defendant temporarily approved some of such accommodations.

20.     Plaintiff alleges that, after she requested various reasonable accommodations, Jensen started to treat her even more differently and adversely.  For example, although Jensen allowed other employees to work from home, Jensen did not

5

allow her to do so until she had to request a reasonable accommodation and received temporary approval to do so.

21.     Plaintiff alleges that, after Defendant approved some of Plaintiff's requests for accommodation on a temporary basis, Jensen placed additional stipulations on the accommodations that Defendant had approved for Plaintiff which other employees did not to have follow.  For example, Plaintiff alleges that, whenever she worked from home, Jensen required that Plaintiff provide her with documentation of all work she had completed on the following business day.  Likewise, Plaintiff alleges that Jensen required her to post her doctor appointments on Jensen's calendar indicating when she was leaving and returning and how and when she planned to make up the time she would be missing.  Additionally, Plaintiff alleges that, after she requested accommodations and after Defendant approved some of such accommodations, Jensen treated her more harshly and adversely in that:

(a)     Jensen stopped the practice of daily meetings with Plaintiff without explanation;

(b)     Jensen no longer paid attention or helped Plaintiff with her work;

(c)      When Plaintiff had questions and asked Jensen for assistance, Jensen told her to figure things out on her own;

6

(d)      Jensen stopped playing a supportive role as a peer support in meetings they attended and started to attend meetings strictly as her supervisor.

22.      Plaintiff alleges that, in May 2017, she complained to a second-level manager by the name of _____ Willoughby (hereinafter "Willoughby") that Jensen's treatment of her had changed.  Plaintiff explained to Willoughby that Jensen's disparate and retaliatory treatment of her was interfering with her ability to do her job. She alleges she explained to Willoughby that other employees recognized the difference in the way Jensen had started treating her compared to how Jensen treated other employees she supervised.

23.      Plaintiff alleges that it was common for Willoughby to meet with new employees over lunch for a one-on-one experience.  Plaintiff alleges that, after she complained to Willoughby, Willoughby cancelled a scheduled lunch meeting with her. Plaintiff alleges that Willoughby cancelled their scheduled lunch meeting because Plaintiff had complained about Jensen.

24.      Plaintiff alleges that, on May 23, 2017, she had a meeting scheduled with a medical provider, Dr.  Orlandi ("Orlandi") in connection with a project she was working on.  Plaintiff alleges that, initially, she was prepared to lead the discussion and facilitate the meeting on her own.  However, Jensen advised her that

7

Jensen would be taking the lead in the meeting and that Plaintiff would be attending

the meeting for informational purposes only.  During the meeting, Orlandi asked

Plaintiff a direct question.  Plaintiff alleges she responded to the question in a direct

and professional manner.  Later, however, Jensen berated Plaintiff because of her

response to Orlandi and accused her of responding inappropriately, resulting in her

supposedly offending Orlandi.  Plaintiff alleges she later approached Orlandi and

apologized if she had offended him.  Orlandi advised Plaintiff that her comments

hadn't offended him and he had never complained about her comments.

25.    Plaintiff alleges that, on June 2, 2017, very soon after Plaintiff had

requested various reasonable accommodations for her migraine disability, Defendant,

abruptly and without explanation, terminated her employment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT DENIED PLAINTIFF
### REASONABLE ACCOMMODATION

26.    Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 25 above as if alleged in full herein.

27.    In order to state a claim of failure to accommodate, Plaintiff must

allege facts that establish, or tend to establish, that: (1) she has a physical or mental

impairment that substantially limits one or more of her major life activities (2) she was

qualified to perform the essential functions of the job she held or desired, with or without a reasonable accommodation; (3) she requested a reasonable accommodation or Defendant knew or should have known of her need for an accommodation; and (4) Defendant refused, declined or failed to provide a reasonable accommodation. *Sanchez v. Vilsack,* 695 F.3d 1174, 1177 (10th Cir. 2012).

28.     To establish the first element of her prima facie case, Plaintiff alleges that she has a physical or mental impairment that substantially limits one or more of her major life activities, including working.  Plaintiff has frequent migraine headaches resulting in debilitating pain, sensitivity to light and sound, nausea and other limtiations.  The term "substantially limited" means, among other things, "[u]nable to perform a major life activity that the average person in the general population can perform", or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity".  29 C.F.R. § 1630.2 (j) (1).  Plaintiff alleges that, during a migraine episode, she is unable to do much of anything, such as drive and to work due to the pain that can last from 12 to 24 hours.

29.     Plaintiff's allegations satisfy the first element of her prima facie case.

30.     To establish the second element of her prima facie case, Plaintiff alleges that she was qualified to perform the essential functions of the job she held or desired, with or without a reasonable accommodation.  Plaintiff alleges she could perform the essential functions of her job with accommodations of a standing desk, a flexible work schedule, working from home one day a week, time off for physical therapy and counseling, and the ability to park closer to her office.

31.     Plaintiff's allegations satisfy the second element of her prima facie case.

32.     To establish the third element of her prima facie case, Plaintiff alleges that she requested various reasonable accommodations or Defendant knew of should have known of her need for reasonable accommodations.  On March 27, 2017, Plaintiff requested a standing desk as an accommodation.  On May 17, 2017, Plaintiff requested a second  accommodation of a flexible work schedule, working from home one day a week, time off for physical therapy and counseling, and the ability to park closer to her office.

33.     Plaintiff's allegations satisfy the third element of her prima facie case.

34.     To establish the final element, Plaintiff alleges that Defendant refused, declined or failed to provide all of the reasonable accommodations Plaintiff

requested in a complete or timely manner. Plaintiff acknowledges that Defendant did

provide Plaintiff an accommodation of a standing desk on March 18, 2017, but only

approved an accommodation of a flexible work schedule, working from home one day

a week, time off for physical therapy and counseling, and the ability to park closer to

her office on May 24, 2017 on a temporary basis and then imposed additional onerous

requirements as conditions to receiving such accommodations and, immediately

thereafter, started treating Plaintiff in a harsh and disparate manner.

   35. Plaintiff's allegations satisfy the final element of her prima facie

case.

   36. Plaintiff's allegations state a prima facie case of failure to afford

reasonable accommodations, in violation of the ADA and the Vocational

Rehabilitation Act.

**SECOND CAUSE OF ACTION**
**PLAINTIFF'S DISABILITY MOTIVATED DEFENDANT'S**
**DECISION TO TERMINATE PLAINTIFF'S EMPLOYMENT**

   37. Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 36 above as if alleged in full herein.

   38. In order to state a claim of discrimination based on disability,

Plaintiff must allege facts that establish, or tend to establish, that: (1) she is disabled in

that she has an impairment which is substantially limiting to a major life activity; (2)

11

she was otherwise qualified for the position in that she could perform the essential

duties of the position she held or desired, with or without a reasonable accommodation;

(3) Defendant subjected her to an adverse action; and (4) the circumstances

surrounding the adverse action give rise to an inference that Defendant took the

adverse action against Plaintiff because of the protected trait. *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 802 (1973).

39.     As set forth above, Plaintiff's allegations satisfy the first and

second elements of her prima facie case.

40.     To establish the third element of her prima facie case, Plaintiff

alleges that Defendant subjected her to an adverse employment action.  An adverse

employment action includes a "significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits".  *Piercy v. Maketa,* 480 F.3d 1192,

1203 (10th Cir. 2007) (internal quotation omitted).  She alleges Defendant subjected

Plaintiff to an adverse employment action on June 2, 2017, when it terminated

Plaintiff's employment.

41.     Plaintiff's allegations satisfy the third element of her prima facie

case.

42.     To establish the final element of her prima facie case, Plaintiff alleges the circumstances surrounding the adverse action give rise to an inference of discrimination.  Potential circumstances that give rise to discrimination include, but are not limited to: (1) disparate treatment which but for the employee's protected trait would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision.  *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

43.     Plaintiff alleges that Defendant treated her differently and adversely based on her disability.  Specifically, Plaintiff alleges that, after Plaintiff disclosed her disability and need for accommodation and then requested various reasonable accommodations, her supervisor began to treat her much differently and adversely.  For example, Defendant did not allow her to work from home as other employees until Defendant approved an accommodation that imposed additional conditions other employees working from home did not have to comply with, such as submitting a daily worksheet plan and report.

44.     Thus, Plaintiff alleges Defendant terminated her employment because of her disability and alleges that any reasons Defendant may articulate for the termination of her employment are false and pretextual and that the real, underlying

reasons for the termination had to do with her disability, her need for accommodations, and her requests for accommodation.

45.    Plaintiff's allegations satisfy the final element of her prima facie case.

46.    Plaintiff's allegations state a prima facie case of discrimination on the basis of disability, in violation of the ADA and the Vocational Rehabilitation Act.

**THIRD CAUSE OF ACTION**
**DEFENDANT SUBJECTED PLAINTIFF TO**
**UNLAWFUL RETALIATION**

47.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 46 above as if alleged in full herein.

48.    In order to establish a claim of retaliation, Plaintiff must allege facts that establish, or tend to establish, that: (1) she engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, Defendant subjected her to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington Northern & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006)).

49.     Plaintiff alleges that, when she requested reasonable accommodations she engaged in protected activity.

50.     The Tenth Circuit has held that requests for reasonable accommodation are protected activity under the ADA.  *See Wehrley v. American Fam. Mut. Ins. Co.,* 513 F.  App'x 733, 740 (10th Cir. 2013) (citing *Jones v. U.P.S., Inc.,* 502 F.3d 1176, 1194 (10th Cir. 2007)).  Plaintiff requested reasonable accommodations on March 27, 2017, and May 17, 2017.  Furthermore, Plaintiff alleges that when she complained to Willoughby, she engaged in protected opposition to discrimination.

51.     Plaintiff's allegations satisfy the first element of her prima facie case.

52.     Plaintiff alleges that, contemporaneous with or subsequent to the protected activity, Defendant took adverse employment action against her.  An adverse action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter Plaintiff or others from engaging in a protected activity.  Plaintiff alleges that, soon after she requested accommodations, Jensen started to treat her differently and more harshly.  For example, Plaintiff alleges that Jensen discontinued one-on-one daily meetings, left Plaintiff on her own to figure out problems, failed to pay attention to Plaintiff's work product and stopped playing a supportive role as a peer support in

meetings.  Plaintiff alleges Defendant also subjected her to an adverse employment action on June 2, 2017 when Defendant terminated her employment.

53.     Plaintiff's allegations satisfy the second element of her prima facie case.

54.     Finally, Plaintiff alleges that there is a causal connection between her engaging in protected activity and the adverse employment action.  The federal discrimination laws require proof that "but for" the protected activity, the adverse action would not have occurred.  *University of Tex. S.W. Med Ctr. v. Nassar,* 133 S.Ct. 2517, 2525 (2013).  Plaintiff alleges that, on March 17, 2017, and again on May 24, 2017, she requested reasonable accommodations.  She alleges that very soon after she engaged in protected activity, Defendant terminated her employment.  Such temporal proximity between her accommodation requests and her termination and other evidence support an inference of a causal connection.

55.     Furthermore, Plaintiff also alleges any reasons Defendant may articulate for the termination of employment are false and pretextual and that the real, underlying reason for the termination had to do with her disability, her need for accommodation, her requests for accommodations and her complaints.

56.     Plaintiff's allegations satisfy the final element of her prima facie case.

57.     Plaintiff's allegations state a prima facie case of retaliation, in violation of the ADA and the Vocational Rehabilitation Act.

## IV.  DAMAGES

58.     Ms. Mannebach alleges Defendant's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, financial stress, emotional distress, and damages to her employability.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.   Declaring that Defendant discriminated against Ms. Mannebach on the basis of her disability and retaliated against her, in violation of the ADA and the Vocational Rehabilitation Act;

2.   Awarding Ms. Mannebach "make whole" relief, including awarding Ms. Mannebach lost wages and lost benefits from the time Defendant terminated Ms. Mannebach's employment until it reinstates her;

3.   In lieu of reinstatement, awarding Ms. Mannebach the lost wage and lost benefit differential from the time Defendant terminated

Ms. Mannebach until Ms. Mannebach secures comparable

employment, or for a period of five years, whichever occurs first;

4.    Awarding Ms. Mannebach her reasonable attorney's fees and

costs;

5.    Awarding Ms. Mannebach such other relief as may be just and

equitable.

DATED this ___ day of February, 2020.


   */s/ David J. Holdsworth*_____
David J.  Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Meredith Mannebach, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of her own knowledge, except as to those matters alleged on information and belief which she believes to be true.


_____
Meredith Mannebach


SUBSCRIBED AND SWORN to before me, a Notary Public, this \_\_\_\_ day of February, 2020.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:          RESIDING AT: _____

_____